UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

CARLTON TREMELL TURNER         CIVIL ACTION NO. 15-cv-2282

VERSUS                          JUDGE HICKS

STEVEN HAYDEN, ET AL            MAGISTRATE JUDGE HORNSBY

**REPORT AND RECOMMENDATION**

**Introduction**

Carlton Turner ("Plaintiff") is a self-represented inmate at the David Wade Correctional Center ("DWCC"). He complains that (1) he was not granted a heat-related duty status and (2), after he filed a grievance, the director of mental health services retaliated against him by filing disciplinary charges.

Plaintiff's original complaint and an amendment (Doc. 10) also complained about conflicts among members of the disciplinary court that heard his disciplinary charges, as well as other issues. Plaintiff later voluntarily dismissed all claims against defendants James Arnold, Mark Hunter, and Lonnie Nail (Docs. 49 and 66). The result of those dismissals is that the only remaining claims are those summarized above, and the remaining defendants are Steven Hayden, Michelle Dauzat, and Dr. Gregory Seal.

Before the court is (1) Plaintiff's Motion for Partial Summary Judgment (Doc. 38) on his medical care claim and (2) defendants Dauzat and Hayden's Motion for Summary Judgment (Doc. 50) that attacks all claims. For the reasons that follow, it is recommended

that Plaintiff's motion be denied and that Defendants' motion be granted. It is also recommended, *sua sponte*, that summary judgment be granted for defendant Dr. Gregory Seal, who was not served until after the current motions were briefed.

**Summary Judgment**

Plaintiff moves for summary judgment on his medical care claim, and defendants Hayden and Dauzat move for summary judgment with respect to all claims against them. Summary judgment is proper when the movant can demonstrate that there is no genuine dispute of material fact and that he is entitled to judgment as a matter of law. All facts and inferences must be construed in the light most favorable to the non-movant. Kirschbaum v. Reliant Energy, Inc., 526 F.3d 243, 248 (5th Cir. 2008). But where the non-moving party fails to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial, no genuine dispute of material fact can exist. McLaurin v. Noble Drilling (US) Inc., 529 F.3d 285, 288 (5th Cir. 2008).

**Medical Care Claim**

    A. Relevant Facts

Plaintiff was prescribed Risperdal, an anti-psychotic medicine that is often used to treat schizophrenia and bipolar disorder. A side effect is that the patient may be more sensitive to temperature extremes such as very hot or cold conditions. Persons taking the drug should avoid becoming overheated or dehydrated.

The Department of Public Safety and Corrections has a healthcare policy regarding psychotropic medications and heat pathology. It provides that offenders prescribed such medication will be monitored and evaluated for potential adverse reactions concerning heat-related pathology, and patients will be educated on matters such as increased consumption of liquids, avoiding undue exposure to the sun, and signs of dehydration. The policy provides that prescribing an antipsychotic medication is "an indication for a heat-related indoor duty status" that specifies the offender be brought indoors when the temperature reaches or exceeds 90 degrees. Such a duty status precludes participation in sports, and job assignments are limited to avoid hot temperatures. Certain practices are followed between May 15 and October 15 to avoid undue heat exposure for persons with a heat-related duty status.

Plaintiff submits evidence that he had a heat-related duty status when he was housed at the Hunt Correctional Center. A document from 2008 indicates that Plaintiff was deemed sensitive to heat, and it was directed that he be allowed 10-minute breaks in the shade every 30 minutes if the temperature exceeded 85 degrees. Another document from Hunt indicates that Plaintiff was designated for "heat alert precautions" in 2011. Plaintiff states in a declaration made pursuant to 28 U.S.C. § 1746 that he received that duty status at Hunt when he was taking only 2 milligrams of Risperdal and 20 milligrams of Paxil, and the duty status had a provision that it would not expire until 2020.

Plaintiff states in his declaration that he arrived at DWCC on May 2, 2011 and initially had a heat sensitivity duty status, but he did not receive such a duty status in the years that followed. His complaint focuses on 2015. Plaintiff asserts that he has not received the duty status even though he now takes a higher dosage of the medications than when he was at Hunt.

Steven Hayden testifies in an affidavit that he is the Director of Mental Health Services at DWCC and was so employed in 2015. He received an administrative grievance from Plaintiff that asserted Plaintiff's life was "being placed in danger" because he was not issued a heat duty status related to his Risperdal, putting him at risk of heat-related problems. Plaintiff requested a new duty status, $10,000, and reassignment to a different work crew.

Hayden testifies that he investigated the grievance and responded to it. The written response explained that heat-related duty statuses were "issued per prescribing psychiatrist Dr. Gregory Seal and all qualifying factors used to determine the needs for are also set by him." The response continued that Plaintiff's chart was reviewed by Dr. Seal, and Seal determined that Plaintiff's current medication did not meet his criteria for heat pathology. The response added that Plaintiff had never reported any symptoms of heat illness, and Plaintiff had once told Hayden that he did not want any duty status that prevented him from using the recreation yard.

Dr. Pam Hearn is the Medical Director at David Wade. She offers an affidavit and testifies that she has reviewed Plaintiff's claims and his medical records. She states that heat-

related duty statuses were issued in 2015 per Dr. Seal, and the qualifying factors used to determine the need for such a status were set by Dr. Seal. The qualification sheet used by Dr. Seal listed the heat pathology qualifying dosages for certain medications. It states: "Risperdal over 4mg daily." Plaintiff alleges that he was receiving precisely 4mg daily, in two doses of 2mg each. Medical records indicate that he was actually receiving one 3mg dose per day. Under either scenario, Plaintiff was not receiving a dosage that would meet the qualification standard.

Dr. Hearn testifies that Plaintiff did not meet the criteria for heat pathology during 2015, and she attaches his relevant medical records. These records show that Plaintiff did receive medical care, including a tooth extraction. The records did not indicate that Plaintiff reported any symptoms related to heat illness to the medical or mental health staff, and the record did not indicate that he suffered any heat-induced syndromes. Dr. Hearn concludes that it is her opinion that Plaintiff was at no time in need of a heath pathology duty status during the relevant period in 2015.

### B. The Constitution and Inmate Medical Care

For a convicted prisoner to prevail on a claim that his medical care (or lack of care) violated the Constitution, he must prove that prison or jail officials were "deliberately indifferent" to his "serious medical needs." Estelle v. Gamble, 97 S.Ct. 285, 291 (1976); Hare v. City of Corinth, 74 F.3d 633, 643 (5th Cir. 1996) (en banc). Deliberate indifference encompasses only unnecessary and wanton infliction of pain repugnant to the conscience of

mankind. Estelle, 97 S.Ct. at 291-92. Disagreement with the diagnostic measures or methods of treatment afforded by prison officials does not state a constitutional claim for indifference to medical needs. Norton v. Dimazana, 122 F.3d 286, 292 (5th Cir. 1997).

**C. Analysis**

Plaintiff was granted a heat-related duty status while housed at Hunt, but that did not mandate that he be forever afforded such a status so long as he was taking Risperdal or similar drugs. Plaintiff's eligibility for such a status was entrusted to the prescribing psychiatrist, and he deemed that Plaintiff did not require such a limitation. There is no evidence that Plaintiff suffered any harmful effects as a result of his not receiving the duty status designation. Dr. Hearn testified that Steven Hayden is not a psychiatrist and is not authorized to issue or deny a heat-related duty status. Warden Michelle Dauzat asserts that she also lacked such authority, and she points out that there are no allegations that she was personally involved in the process in any way. It appears Plaintiff named Dauzat as a defendant based solely on her supervisory position.

The undisputed facts would not allow a reasonable juror to find that Steven Hayden or Michelle Dauzat were deliberately indifferent to Plaintiff's serious medical needs. Deliberate indifference is "an extremely high standard to meet," and even acts that may be medical malpractice are not necessarily sufficient to meet the standard. Gobert v. Caldwell, 463 F.3d 339, 346 (5th Cir. 2006). Furthermore, prison staff and supervisors such as Dauzat and Hayden are entitled to defer to the judgment of medical professionals. See, e.g. Vasquez

v. Dretke, 226 Fed. Appx. 338 (5th Cir. 2007) (warden and director of clinical services "were not deliberately indifferent" when "they deferred to the judgment of medical professionals by denying [a prisoner] dentures"); Garza v. Chaney, 2007 WL 4367882, *6 (S.D. Tex. 2007) ("it was reasonable for Assistant Warden Mundy to rely on the medical department to handle the medical needs of the inmates"); and Jones v. Livingston, 2005 WL 3618316, *3 (S.D. Tex. 2005) ("it would be reasonable for Warden Morales to refer the matter to, and rely on, the medical decisions of Dr. Herrera").

Hayden and Dauzat, to the extent they were involved in Plaintiff's care, deferred to the medical decision of the prescribing psychiatrist, Dr. Seal. They were entitled to do so, and they may not be found to have violated the Eighth Amendment because they did not go beyond their prescribed authority and mandate a heat duty status despite the decision of Dr. Seal. There is also no evidence or even allegation that Plaintiff suffered any actual harm as a result of his work assignments or other heat exposure. Accordingly, all medical care claims against Hayden and Dauzat should be dismissed.

**D. Dr. Seal**

Dr. Gregory Seal was among the original defendants, but Plaintiff was unable to obtain valid service on him. Seal was dismissed from the suit, but the court allowed Plaintiff time to discover a valid service address, and Plaintiff was eventually able to do so. Dr. Seal was added back to the case, and the Marshal was able to serve him. Seal recently filed an answer.

Dr. Seal had not been joined in the case at the time the other defendants filed their motion for summary judgment, so Seal did not join in the motion. Plaintiff, however, included Seal among the defendants against whom he sought summary judgment, so Plaintiff has had an opportunity to present his summary judgment evidence in support of any claim against Dr. Seal.

A district court may enter summary judgment sua sponte so long as the losing party was on notice that he had to come forward with all of his evidence. Atkins v. Salazar, 677 F.3d 667, 678 (5th Cir. 2011); Markel American Ins. Co. v. Verbeek, 657 Fed. Appx. 305, 310 (5th Cir. 2016). When Plaintiff moved for summary judgment on a claim in which he had the burden of proof at trial, he was obligated to present evidence that would entitle him to judgment as a matter of law if it went uncontroverted. International Shortstop, Inc. v. Rally's, Inc., 939 F.2d. 1257, 1264 (5th Cir. 1991). Plaintiff has not, however, presented evidence sufficient to warrant further proceedings with respect to the claims against Dr. Seal.

The summary judgment record shows that Dr. Seal had the authority to issue a heat duty status but exercised his medical judgment and determined that Plaintiff did not warrant such status. Plaintiff disagrees with that decision, but he points to no decisions that indicate the Eighth Amendment's ban on cruel and unusual punishment mandates such a status in these circumstances. Moreover, there is zero evidence that Plaintiff suffered any heat-related problems due to his lack of the desired duty status. Accordingly, Dr. Seal is also entitled to summary judgment with respect to all claims against him.

**Retaliation**

Steven Hayden's response to Plaintiff's duty-status grievance mentioned that Plaintiff had not complained of any mental health or heat-related issues, but Plaintiff had repeatedly requested a personal meeting with Warden Michelle Dauzat. Hayden quoted Plaintiff as making statements that he had been "watching" Dauzat and knew what time she would arrive. Hayden said that Plaintiff acknowledged writing a "sexual letter" that would probably prevent Dauzat from agreeing to meet with him, but Plaintiff said that if Hayden asked her it might "catch her off guard" and garner a meeting. Hayden wrote in the grievance response that Plaintiff had been found guilty of an aggravated sex offense and assigned to administrative segregation.

A few days after the grievance response issued, Plaintiff wrote Hayden a letter that began by stating that Plaintiff assumed Hayden considered his response to the grievance "a rather slick move." Plaintiff stated that the response had actually been "very asinine" and that Hayden was "not aware of the pile of feces u have stepped into." Plaintiff proceeded to explain that the "sexual letter" he wrote did not express his personal intentions towards Warden Dauzat, but was actually part of a ruse to get another inmate in trouble as revenge for a failed financial transaction. That inmate whose name Plaintiff had signed to the letter had somehow "ratted" and alerted security that Plaintiff was the true author, which led to discipline. Plaintiff wrote that Hayden's "write-up will soon bring about ur downfall," and Plaintiff thanked Hayden for the "free money" he was generating for Plaintiff. The letter

concluded with a reference to a new grievance and an intended Section 1983 suit for retaliation.

Hayden issued a disciplinary charge/rule violation report for defiance. Hayden testifies that the charge was based on the derogatory tone of the letter and its threats against him. Hayden later issued a second disciplinary charge against Plaintiff after, Hayden testifies, Plaintiff continued interrupting Hayden with rude and profane language while Hayden was trying to speak to other inmates. Plaintiff was found guilty and disciplined for both charges. Hayden testifies that the charges were based on Plaintiff's misconduct and that he did not retaliate against Plaintiff for exercising his right to file a grievance or suit.

A disciplinary charge that is made in retaliation for an inmate exercising a constitutional right may give rise to a Section 1983 claim. The question with respect to such a claim is whether there was retaliation for the exercise of a constitutional right, separate and apart from whether the underlying charge was valid. Woods v. Smith, 60 F.3d 1161, 1165 (5th Cir. 1995). The Fifth Circuit, fearful of conclusory and frivolous claims of retaliation, instructed in Woods that "trial courts must carefully scrutinize these claims." Id. at 1166. The inmate must be able to establish the violation of a specific constitutional right and that, but for the retaliatory motive, the defendant would not have issued the disciplinary charge. This places a "significant burden" on an inmate and "[m]ere conclusionary allegations of retaliation will not withstand a summary judgment challenge." Id. The inmate must produce

direct evidence of motivation or set forth a chronology of events from which retaliation may plausibly be inferred.  Id.

Defendants attacked the retaliation claim in their motion and argued that there was no supporting evidence.  That satisfied their initial summary judgment burden and shifted the burden to Plaintiff to go beyond the pleadings and produce evidence that creates a genuine issue for trial.  Davis v. Ft. Bend Cty., 765 F.3d 480, 484 (5th Cir. 2014).  Plaintiff did not include the retaliation charge in his motion for partial summary judgment, and he did not file any response to the defense motion.

Considering the facts set forth by Hayden in his affidavit and the lack of competing summary judgment evidence offered by Plaintiff, Hayden is entitled to summary judgment on the retaliation claim.  Hayden's submissions shifted the summary judgment burden to Plaintiff, and he did not respond with evidence capable of satisfying his significant burden under Woods.

Plaintiff's original complaint was accompanied by declarations from other inmates that Plaintiff was not yelling and interrupting Hayden as alleged in the second disciplinary report.  But a mere assertion that a disciplinary charge was false does not state an actionable claim under 42 U.S.C. § 1983.  Jackson v. Mizzel, 361 Fed. Appx 622, 626 (5th Cir. 2010); Williams v. Dretke, 306 Fed. Appx. 164, 166 (5th Cir. 2009).  Such a charge, whether true or false, can be the basis for a retaliation claim, but Plaintiff did not provide sufficient evidence to survive summary judgment on a retaliation claim.

Accordingly,

**IT IS RECOMMENDED** that Plaintiff's Motion for Partial Summary Judgment (Doc. 38) be denied, that the Motion for Summary Judgment by Steven Hayden and Michelle Dauzat (Doc. 50) be granted, and that Dr. Gregory Seal be granted summary judgment *sua sponte*. Acceptance of these recommendations will result in the dismissal of all remaining claims against all remaining defendants.

## Objections

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this report and recommendation to file specific, written objections with the Clerk of Court, unless an extension of time is granted under Fed. R. Civ. P. 6(b). A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof. Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

A party's failure to file written objections to the proposed findings, conclusions and recommendation set forth above, within 14 days after being served with a copy, shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. See Douglass v. U.S.A.A., 79 F.3d 1415 (5th Cir. 1996) (en banc).

THUS DONE AND SIGNED in Shreveport, Louisiana, this 6th day of March, 2017.

_____
Mark L. Hornsby
U.S. Magistrate Judge